IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ROBINSON,<br>    Plaintiff,<br><br>    v.<br><br>SEPTA,<br> ALETHA EVANS, and<br> MARK LASHLEY,<br>    Defendants. | CIVIL ACTION<br><br><br><br>NO.  22-4572 |

MEMORANDUM

HODGE, J.                                      May 1, 2024

   Carol Robinson ("Plaintiff") filed an amended complaint against her employer, Southeastern Pennsylvania Transportation Authority ("SEPTA"), and her supervisors, Aleta Evans (improperly named as "Aletha Evans" in the Amended Complaint) and Mark Lashley, (collectively "Defendants"), asserting claims for retaliation under the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), the Family and Medical Leave Act ("FMLA"), and 42 U.S.C. § 1983 ("Section 1983"). (ECF No. 10.)

   Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 14.) For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion.

**I.   BACKGROUND**[1]

   Beginning in September 2019, Plaintiff Carol Robinson was the Director of Control Center Bus Operation at Defendant SEPTA, a municipal agency. (ECF No. 10 at 2 ¶¶ 7, 9.) Plaintiff avers that she opposed the discriminatory actions of her supervisors and others—including Defendants Aleta Evans, Chief Officer, and Mark Lashley—towards Robert Gardner, "a person with known

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

disabilities and who had approved accommodations for his disability," whom Plaintiff supervised. (*Id.* at 2 ¶ 10, 4 ¶ 23.) "Plaintiff was also a witness for Mr. Gardner providing favorable information about Mr. Gardner to SEPTA during the investigation of Mr. Gardner's requests for accommodations because of his disability." (*Id.* at 3 ¶ 11.) As a result of Plaintiff's opposition to the treatment of Mr. Gardner, Plaintiff claims that she was subjected to retaliatory harassment and other retaliatory actions. (*Id.* ¶ 12.)

Plaintiff asserts that she engaged in several protected activities under the ADA to oppose the alleged discrimination of Mr. Gardner. In January 2019, Plaintiff alleges that she told Director Michaeleen Benson and Defendant Evans that she felt their treatment of Mr. Gardner was unfair. (*Id.* at 4 ¶ 21.) In or about January/February 2019, Plaintiff alleges that when she advocated for Mr. Garner that Defendant Evans would scream at her. (*Id.* at 5 ¶ 24.) In March 2019, Plaintiff claims that Benson told her that "Evans had suggested that Benson and Plaintiff should complain to SEPTA's EEO that they were afraid of Robert Gardner because he has a violent condition (PTSD) for the purpose of getting Gardner out of the department." (*Id.* ¶ 26.) Plaintiff alleges she told Benson that she would not falsely complain to SEPTA's EEO about Mr. Gardner. (*Id.*) In or about July 2019, Plaintiff alleges that Defendant Evans would ignore Plaintiff's requests to purchase items needed for Mr. Gardner's accommodations, causing Plaintiff to purchase the items out-of-pocket. (*Id.* at 7 ¶ 31.) In August 2019, Plaintiff asserts that Defendant Evans "threatened to discipline" Plaintiff and another employee when Plaintiff did not issue a "written counseling" to Mr. Gardner, as Defendant Evans wanted, for a conflict with a street supervisor; instead, Plaintiff opted for a discussion with Gardner. (*Id.* at 5-6 ¶ 27.)

In September 2019, Plaintiff was promoted to Director of Control Center Bus Operation, which resulted in an 8.45% salary increase. (*Id.* at 2 ¶ 9; ECF No. 14 at 3.) Sometime after

2

Plaintiff's promotion, during a meeting with SEPTA's EEO to discuss an alleged unnecessary change to Mr. Gardner's shift, Plaintiff alleges that Defendant Evans intimidated her during the meeting by nudging Plaintiff before she answered questions, thereby, restraining what Plaintiff felt comfortable sharing. (ECF No. 10 at 6 ¶ 28.) In October 2019, Plaintiff claims that Defendant Evans "stated that Gardner would never work as a TEXT Controller unless she was given a directive from her boss or never as long as she was the Chief Officer." (*Id.* at 7 ¶ 33.) Plaintiff alleges that she "explained to Evans that it was a violation of Gardner's rights to not provide him an opportunity to perform this assignment." (*Id.*) In response to these statements, Plaintiff alleges that Defendant Evans began to curse and scream at her. (*Id.*) In December 2019, Plaintiff alleges two additional actions that she perceived as discriminatory towards Mr. Gardner that she intervened or voiced opposition to, including an alleged blocking of Gardner's consideration for Backfill Chief and contested observance of Gardner's FMLA intermittent leave. (*Id.* at 8-9 ¶¶ 36-37.) Plaintiff further alleges that Defendant Evans would shame her and scream at her in the presence of other colleagues. (*Id.* at 9 ¶ 38.) Overall, Plaintiff claims that Defendant Evans "falsely and negatively degrad[ed] Plaintiff's evaluation, intentionally misguide[ed] Plaintiff on various matters, . . . [and] excluded [Plaintiff] from important work-related conversation, information and meetings." (*Id.*)

In August 2020, Plaintiff asserts additional back-to-back incidents of Defendant Evans screaming and cursing at her. (*Id.* at 10 ¶¶ 40-41.) In September 2020, Plaintiff alleges another incident of Defendant Evans screaming at her and another co-worker during a videoconference meeting, embarrassing Plaintiff. (*Id.* at 11 ¶ 42.) In October 2020, Plaintiff claims that Defendant Evans gave her a "needs improvement" rating on her performance evaluation, even though she met over 85% of her work goals, which resulted in only a 2% merit increase compared to the

minimum alleged by Plaintiff of 3.5%. (*Id.* at 9-10 ¶ 39.) Plaintiff challenged her 2020 evaluation, and it was changed to a "meets expectations" rating and she received a raised 2.75% merit increase, still lesser than 3.5% by 0.75%. (*Id.*) Between September 2020 to November 2020, Plaintiff alleges that before and after she received the negative 2020 performance evaluation that she tried to meet with Human Resources (HR); Plaintiff alleges difficulty getting this meeting scheduled due to unresponsiveness from HR and barriers caused by Defendant Evans. (*Id.* at 11 ¶ 43.) When the performance evaluation was changed in June 2021, Plaintiff avers that Defendant Evans told Plaintiff that she did not agree with the decision. (*Id.* at 13 ¶ 49.)

In January 2021, Plaintiff alleges another incident of her advocating to Defendant Evans for Mr. Gardner to receive the proper console configuration. (*Id.* at 12 ¶ 45.) In March 2021, Plaintiff asserts that she "underwent a series of consultations with SEPTA's Employee Assistance Program . . . because of the retaliatory harassment and actions by [Defendant] Evans." (*Id.* ¶ 46.) In May 2021, Plaintiff alleges that her "picking"[2] was rejected by Defendant Lashley because "the people that picked the overnight shift (referring to Gardner) are unreliable and that 'these FMLA people don't come to work.'" (*Id.* at 13 ¶ 48.) Plaintiff avers that she told Defendant Lashley that a re-pick for that reason was not allowed; Plaintiff alleges that Defendant Lashley responded, "I am sick and tired of being between you and [Defendant Evans]," suggesting that Defendant Evans was involved in the rejection of the picking. (*Id.*) In June 2021, Plaintiff alleges that Defendants Evans and Lashley yelled and scolded her about "FMLA sick book entries of Robert Gardner and others," and Plaintiff further avers that she "reiterated that she would not do anything to violate anyone's rights." (*Id.* ¶ 49.)

---

[2] The parties do not define what a "picking" is; however, it appears based on context to be a process of creating the work schedule and assigning shifts.

In August 2021, Plaintiff had an excused absence for medical reasons. (*Id.* at 14 ¶ 50.) Defendant Lashley, forgetting Plaintiff's excused absence, issued a one-day suspension to Plaintiff. (*Id.* ¶ 51.) In September 2021, Plaintiff appealed the one-day suspension, which was successfully overturned. (*Id.*) In November 2021, Plaintiff alleges that Defendant Lashley used the one-day suspension to give Plaintiff a "needs improvement" rating on her performance evaluation, which resulted in only a 2.5% merit increase compared to the 3.5% allegedly received by Plaintiff's peers. (*Id.* ¶ 52.) SEPTA's HR ordered Defendant Lashley to retract the comment about the suspension in Plaintiff's evaluation, which he did in December 2021, but her performance evaluation rating was not upgraded and her merit increase was not raised. (*Id.* ¶¶ 52-53.) Plaintiff further alleges that her lower 2.5% merit increase was approved by Defendant Evans. (*Id.* ¶ 53.)

Defendants move to dismiss Plaintiff's Amended Complaint, arguing that most of Plaintiff's Amended Complaint is time-barred and she fails to state a claim for retaliation under any statute. (ECF No. 14.) Plaintiff opposes the motion. (ECF No. 15.)

## II.  LEGAL STANDARD

In assessing whether Plaintiff has alleged claims upon which relief may be granted, the Court applies the familiar standard applicable to Rule 12(b)(6) motions. A plaintiff's complaint must provide merely a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler v. UPMC*

5

*Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This standard "'does not impose a probability requirement at the pleading stage.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Instead, "[t]he complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler*, 578 F.3d at 213).

### III.   DISCUSSION

Defendants argue that most of Plaintiff's allegations are time-barred and cannot form the basis of her retaliation claims. (*See* ECF No. 14 at 4.) Defendants move to dismiss Plaintiff's ADA and PHRA retaliation claims, arguing that Plaintiff has not alleged an adverse employment action or a causal connection. (*See id.*) Defendants also contend that Plaintiff's retaliatory harassment and hostile work environment claims are not sufficiently severe or pervasive. (*See id.* at 5.) Further, Defendants argue that Plaintiff's FMLA retaliation claim should be dismissed because she does allege that she took FMLA leave or experienced an adverse employment action. (*See id.*) Finally, Defendants argue that Plaintiff's Section 1983 retaliation claim is legally insufficient. (*See id.*) The Court addresses each of Defendants' contentions below.

#### A.   Timeliness

Retaliation claims under the ADA and PHRA are governed by 300 and 180-day limitation periods respectively. *See, e.g.*, *Mercer v. SEPTA*, 26 F. Supp. 3d 432, 440-41 (E.D. Pa. 2014), aff'd sub nom., 608 F. App'x 60 (3d Cir. 2015) ("Under the ADA, a plaintiff who initially seeks relief from a state or local agency has 300 days from the alleged unlawful employment practice to file a charge of employment discrimination with the EEOC."); *Clarkson v. SEPTA*, No. 14-2510, 2014 WL 5483546, at *2 (E.D. Pa. Oct. 30, 2014), aff'd, 700 F. App'x 111 (3d Cir. 2017) (holding

a plaintiff "must file a complaint with the PHRC within 180 days of the alleged discriminatory act."). Since Plaintiff filed her administrative charge on March 8, 2022, the limitation periods for her claims under the ADA and PHRA are May 12, 2021 and September 9, 2021, respectively.

To assert a retaliation claim under the ADA and PHRA, a plaintiff must, among other things, allege "discrete acts" that are actionable and occurred within the limitation period. *See Clemena v. Philadelphia Coll. of Osteopathic Med.*, No. 17-428, 2017 WL 3453338, at *4 n.7 (E.D. Pa. Aug. 11, 2017). Any act occurring outside of the limitation period "becomes time-barred, and the [plaintiff] 'lose[s] the ability to recover for it.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002)). "'Discrete acts' are individually actionable and are considered time-barred if they fall outside of the statutory period, regardless of if they are related to acts within the statutory period." *Lamonde v. Bath Saver, Inc.*, No. 21-2385, 2022 WL 622739, at *3 (E.D. Pa. Mar. 3, 2022) (citing *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)). "However, if a plaintiff alleges ongoing, systematic violations, he or she can recover for acts outside the 300-day period using the continuing violations theory." *Id.* (citing *Nat'l R.R. Passenger Corp.*, 536 U.S. at 110-12). "[A]cts underlying hostile work environment claims 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 432 (E.D. Pa. 2023) (quoting *O'Connor*, 440 F.3d at 127).

In her response in opposition, Plaintiff concedes that several of her allegations in 2019 and 2020 "are outside the statute of limitations," but she avers that the allegations are not discrete acts and were provided for context. (ECF No. 15 at 18 ("Evidence of Defendants' retaliatory actions against Plaintiff, even if for purposes of an ADA or PHRA claim are outside the statute of limitations, are still relevant to show Defendants' retaliatory motives and intent for those

7

retaliatory actions that are within the statute of limitations.").) As such, the Court will focus only on Plaintiff's allegations in paragraphs 47-53 of her Amended Complaint for discrete actions. The Court finds that Plaintiff's allegations fall under the continuing violations theory that she worked in a hostile work environment. "Because of the continuing violations doctrine, Plaintiff is allowed to include facts that occurred outside the statute of limitations to prove a pattern or continuation of discrimination." *Lamonde*, 2022 WL 622739, at *3.

> B.  **Retaliation Claims under ADA and PHRA**

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the . . . protected activity; and (3) a causal connection between the . . . protected activity and the . . . adverse action."[3]  *Tielle v. Nutrition Grp.*, 810 F. App'x 160, 162 (3d Cir. 2020) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). Primarily, Defendants challenge whether Plaintiff's claim alleges an adverse employment action. An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749 (1998). Such an action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment," and "must be more than de minimus or trivial." *Mandalapu v. Temple Univ. Hosp., Inc.*, No. 15-5977, 2018 WL 3328026, at *11-13 (E.D. Pa. July 5, 2018), aff'd sub nom., 786 F. App'x 348 (3d Cir. 2019).

---

[3] Courts construe the provisions contained under the PHRA consistent with its federal counterparts. *See Smith v. Comhar, Inc.*, No. 15-4913, 2017 U.S. Dist. LEXIS 33645, at *18 (E.D. Pa. 2017); *Kroptavich v. Pa. Power & Light Co.*, 795 A.2d 1048, 1054 (Pa. Super. Ct. 2002). *See also Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (analyzing the PHRA in conjunction with its federal counterparts).

Plaintiff alleges that she suffered the following adverse employment actions within the statute of limitations: (1) a one-day suspension on August 28, 2021; (2) a negative performance evaluation on November 21, 2021; (3) a reduction of her merit increase to 2.5% instead of the 3.5% given to other co-workers in December 2021; and (4) retaliatory harassment and a hostile work environment spanning from October 2019 to December 2021.[4] (*See* ECF No. 15 at 21-22.) In contrast, Defendants argue that Plaintiff has not alleged an adverse employment action because she was not materially injured. Specifically, Defendants highlight that (1) Plaintiff's one-day suspension was never served and the decision was overturned; (2) Plaintiff successfully challenged her negative performance evaluation and it was changed; (3) Plaintiff was not entitled to a specific merit wage increase; and (4) Plaintiff "describes a handful of sporadic disagreements and trivial feuds," not severe or pervasive enough to create a hostile work environment. (*See* ECF No. 14 at 16-17, 20.) The Court briefly analyzes each alleged adverse employment action.

As a preliminary matter, Defendants frequently cite caselaw that "a suspension with pay, 'without more,' is not an adverse employment action," *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015), or "[a] negative evaluation, by itself, is not an adverse employment action." *Tucker v. Merck & Co.*, 131 F. App'x 852, 857 (3d Cir. 2005); *Clark v. Philadelphia Hous. Auth.*, 701 F. App'x 113, 117 (3d Cir. 2017). However, the crux of Plaintiff's claims is that there were a series of adverse employment actions stacking on top of each other: It was the suspension and the negative evaluation and the reduced pay and the negative comments. As such, the Court does not view Plaintiff's allegations in a vacuum and thus, finds the caselaw cited by Defendants neither instructive nor persuasive to address these alleged facts.

---

[4] The Court finds that the alleged negative performance evaluation and reduced merit increase in 2020 are both outside of the statute of limitations. As such, those allegations will not be considered as "discrete acts" that are alleged adverse employment actions for Plaintiff's retaliation claims.

On the other hand, the Court is persuaded by Defendants' arguments that the one-day suspension and the 2021 negative performance review are not adverse employment actions because they were remedied. Plaintiff's one-day suspension after Defendant Lashley mistakenly believed that Plaintiff had an unexcused absence was never served, and Plaintiff immediately appealed the suspension, which SEPTA overturned. Thus, no harm was incurred by Plaintiff. Also, the negative comment Defendant Lashley included in Plaintiff's 2021 performance evaluation was removed at SEPTA's direction after Plaintiff successfully disputed her performance evaluation. "[A]s a matter of law, a response by the employer that is effective, i.e., one that in fact prevents further harassment, is adequate and insulates the employer from liability for a hostile-work-environment claim." *Stein v. Att'y Gen. United States*, No. 22-2862, 2023 WL 3993014, at *3 (3d Cir. June 14, 2023) (first citing *Jensen v. Potter*, 435 F.3d 444, 453 (3d Cir. 2006); then citing *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 110 (3d Cir. 2009)). Further, the Third Circuit has held that an "employer cannot be liable under Title VII if its remedial action stopped the harassment." *Huston*, 568 F.3d at 110 (citing *Knabe v. Boury Corp.*, 114 F.3d 407, 412 n.8 (3d Cir. 1997)). As such, the Court finds that Plaintiff cannot claim that the one-day suspension and 2021 negative performance review were adverse employment actions because they were remedied and, therefore, the actions did not have a material impact on Plaintiff.

The Court notes Plaintiff's allegation that her 2.5% wage increase would have been higher if not for the negative performance evaluation. However, the Third Circuit and this Court have recognized that anti-retaliation laws are not intended to address situations where an employee claims to be aggrieved by "a lower-than-expected merit wage increase or bonus." *See, e.g.*, *Walker v. Centocor Ortho Biotech, Inc.*, No. 11-4917, 2013 WL 664204, at *3 (E.D. Pa. Feb. 25, 2013), aff'd, 558 F. App'x 216 (3d Cir. 2014) (rejecting plaintiff's retaliation claim premised on the

notion that she received a "lower-than-expected raise" as there could be no adverse employment action); *Solomon v. Caritas*, No. 15-4050, 2016 WL 4493193, at *5 (E.D. Pa. Aug. 26, 2016) (rejecting plaintiff's argument that she was not given an appropriate bonus and explaining that "an employer's decision to not give an employee a bonus or wage increase generally does not constitute an adverse employment action"); *E.E.O.C. v. Wyeth Pharm.*, No. 03-2967, 2004 WL 503417, at *2 (E.D. Pa. Mar. 11, 2004) (holding that de minimis decline in bonus increase did not constitute an adverse employment action). As such, the Court finds that Plaintiff's allegation that she received a reduced merit increase of 2.5% compared to the minimum alleged by Plaintiff of 3.5% does not constitute an adverse employment action.

Finally, Plaintiff alleges that the harassment and hostile work environment she experienced from October 2019 to December 2021 was an adverse employment action.[5] The Third Circuit has recognized a cause of action where retaliation manifests as a hostile work environment. *See Jensen*, 435 F.3d at 449 (recognizing "retaliatory harassment" cause of action under Title VII), overruled in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). In a retaliatory harassment claim, harassment that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" is sufficient to establish an adverse employment action. *O'Shea v. Interboro Sch. Dist.*, No. 13-6305, 2014 WL 5038391, at *2 (E.D. Pa. Oct. 9, 2014) (quoting *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006)). "Notably, to sustain a claim for hostile work environment, the discrimination must be either severe or pervasive; the alleged discrimination need not be both severe and pervasive." *Gross v. Hatboro-*

---

[5] For this fourth alleged adverse employment action, the Court does consider the full scope of Plaintiff's claims, even allegations that fall outside of the statute of limitations because at least some of Plaintiff's allegations occurred within the statute of limitations, satisfying the continuing violations doctrine. *See supra* pages 6-8.

*Horsham Sch. Dist.*, No. 23-0633, 2023 WL 4867423, at *9 (E.D. Pa. July 31, 2023) (citing *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017)). In deciding whether a plaintiff has sufficiently pled severe or pervasive discrimination, "the court must look [] at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 132 (E.D. Pa. 2020).

Defendants argue that, at most, Plaintiff has only alleged that from October 2019 to December 2021, Plaintiff raises "benign and isolated interactions" such as:

1. In January 2019, Robinson claims that she asked Ms. Evans why she did not choose Gardner for an overtime rotation and Ms. Evans responded, "why do you care?" (Am. Compl., ¶ 21.)

2. In August 2019, Robinson disagreed with Ms. Evans' recommendation to issue "counseling" for Gardner and another employee, who he quarreled with. (Id., ¶ 27.)

3. A few weeks after SEPTA promoted Robinson to a director-level role, she claims that Ms. Evans tried to "intimidate" her by "nudging" her at meeting where SEPTA's EEO asked Robinson about adjustments that were made to Gardner's work shift. (Id., ¶ 28.)

4. On December 2, 2019, Robinson contends that Ms. Evans said, "huh, you better than me" during an interaction where Robinson suggested Gardner's as a candidate for a "backfill chief" job. (Id., ¶ 36.)

5. On December 23, 2019, Robinson was "scolded because [Ms.] Evans suggest[ed] that [Robinson] call [two employees] at home to ask for a sick note." (Id., ¶ 37.)

6. In June 2021 Robinson vaguely contends that she was "scolded" for certain "sick book entries. (Id., ¶ 49.)

(ECF No. 15 at 21-22.)

However, at this juncture, the Court does not agree with Defendants' characterization that Plaintiff's allegations are benign or isolated. Plaintiff's allegations go beyond the six paragraphs Defendants cite above, cataloging a series of events from 2019 to 2021. *See supra* pages 1-5. There are certainly questions about whether the discriminatory events alleged by Plaintiff are as severe

12

or pervasive as Plaintiff alleges. The Court finds that—viewing the facts in the light most favorable to Plaintiff—Plaintiff has sufficiently pled retaliatory harassment and hostile work environment as an adverse employment action.

Defendants also argue that Plaintiff cannot demonstrate that any alleged harassment is casually connected to any protected activity.[6] In determining whether conduct was retaliatory, courts have tended to focus on two factors: (1) the "temporal proximity" between the protected activity and the alleged discrimination and (2) the existence of "a pattern of antagonism in the intervening period." *See Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001) (quoting *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997)). Timing alone raises the requisite inference when it is "unusually suggestive of retaliatory motive," but even if "temporal proximity . . . is missing, courts may look to the intervening period for other evidence of retaliatory animus." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997). Despite this focus, "[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000); *see also Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 178 (3d Cir. 1997) ("The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific.").

Again, at this stage of the proceedings, the Court finds that Plaintiff has sufficiently pled allegations to survive a motion to dismiss. Although the Court believes that there may be questions

---

[6] In response to this argument, Plaintiff includes references to paragraphs, presumably, from another brief involving individuals called "Berry and Brooks" and references claims not at issue in this matter. (*See* ECF No. 15 at 20-21.) At this stage, the Court will not make a negative inference against Plaintiff for this error. However, Plaintiff needs to be more diligent in her filings and in what she presents to the Court. Opposing counsel made a valid point regarding the glaring inclusion of an argument that was wholly irrelevant to this matter.

about whether Plaintiff's allegations establish "temporal proximity" and "a pattern of antagonism in the intervening period," such issues can be developed further in discovery and would be more appropriately addressed in a summary judgment motion. *See Abramson*, 260 F.3d at 288. Therefore, Defendants' motion to dismiss Plaintiff's ADA and PHRA claims is denied. Plaintiff may proceed on the theory that retaliatory harassment and a hostile work environment were the adverse employment actions.

### C.      FMLA Retaliation Claim

In evaluating Plaintiff's FMLA retaliation claim, "Plaintiff must show specifically that '(1) [s]he invoked [her] right to FMLA-qualifying leave, (2) [s]he suffered an adverse employment decision, and (3) the adverse action was causally related to [her] invocation of rights.'" *Hanafy*, 669 F. Supp. 3d at 439 (quoting *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014)).

Plaintiff's FMLA retaliation claim is dismissed because she cannot satisfy the first element: Plaintiff did not invoke her right to FMLA-qualifying leave. Unlike an ADA claim, for example, Plaintiff cannot bring an FMLA retaliation claim for opposing an alleged violation of a third party's FMLA rights. (*See* ECF No. 10 at 16-17 ¶ 63.) As such, Defendants' motion to dismiss Plaintiff's FMLA claim is granted.

### D.      Section 1983 Retaliation Claim

Plaintiff's Section 1983 claim fails to survive Defendants' Motion to Dismiss on two bases. First, Plaintiff's Section 1983 claim must be dismissed because Plaintiff "may not seek damages [] under § 1983 for statutory violations of [] the ADA, standing alone." *Williams v. Pennsylvania Hum. Rels. Comm'n*, 870 F.3d 294, 300 (3d Cir. 2017); *see also Mercer*, 26 F. Supp. 3d at 448 (recognizing that "many courts have concluded that plaintiffs are foreclosed from bringing a § 1983 claim based on alleged ADA violations").

Second, Plaintiff further attempts to recharacterize her ADA retaliation claim as a violation of her First Amendment rights. "To state a First Amendment retaliation claim, a public employee plaintiff must allege: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *DeLuzio v. Monroe Cnty.*, 271 F. App'x 193, 196 (3d Cir. 2008) (citing *Phyllis Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)). "The first factor is a question of law; the second factor is a question of fact." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). As to the first prong, the First Amendment protects a public employee's statement when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement made." *Id.* at 241-42 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "A public employee does not speak 'as a citizen' when he makes a statement 'pursuant to [his] official duties.'" *Id.* at 242 (quoting *Garcetti*, 547 U.S. at 421-22).

Plaintiff's Amended Complaint alleges that she was advocating for Mr. Gardner, whom Plaintiff supervised, regarding his schedule, work set-up, promotions, general treatment, and more. The Court finds that Plaintiff's statements fall within the realm of Plaintiff's professional responsibility or her official duties as Mr. Gardner's supervisor. Thus, Plaintiff did not speak "as a citizen." Therefore, Plaintiff has not alleged that her activity is protected by the First Amendment. Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim under Section 1983 is granted.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss Plaintiff's FMLA and Section 1983 retaliation claims. Further, the Court denies Defendants' motion to dismiss Plaintiff's ADA and PHRA claims. An appropriate order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge

_____
**HODGE, KELLEY B., J.**