IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ROBINSON,<br>                Plaintiff,<br><br>      v.<br><br>SEPTA and<br>ALETA EVANS,<br>                Defendants. | CIVIL ACTION<br><br><br><br>NO.  22-4572 |

HODGE, J.                                                                                                           July 31, 2025

**MEMORANDUM**

This case is the second that Plaintiff Carol Robinson has filed against her employer, Southeastern Pennsylvania Transportation Authority ("SEPTA"), and her supervisor, Aleta Evans[1] (collectively "Defendants"), asserting claims for retaliation under the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA"). (ECF No. 37.) Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 47.) For the reasons set forth below, the Court denies Defendants' Motion.[2]

I.   **BACKGROUND**[3]

   A. **Procedural History**

On November 16, 2022, Plaintiff filed her first complaint against Defendants SEPTA and SEPTA Chief Officer Aleta Evans in this Court, alleging employment retaliation under the ADA,

---

[1] The Complaint improperly refers to Ms. Evans as "Aletha" Evans. (ECF No. 47 at 3)
[2] In Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, Plaintiff argues that Defendants' present Motion must be treated as a motion for summary judgment because it contains facts not asserted in the Complaint, or the Court must disregard those additional facts. (ECF No. 48 at 5.)  Consistent with Federal Rule of Civil Procedure 12(d), the Court will consider only allegations within the pleadings for purposes of ruling on Defendants' Motion to Dismiss.
[3] The Court adopts the pagination supplied by the CM/ECF docketing system.

the PHRA, the Family Medical Leave Act (FMLA), and 42 U.S.C. § 1983. For the sake of brevity, the Court will not restate all the allegations contained in Plaintiff's first complaint, but the relevant claims are as follows[4]. Plaintiff alleged that in her role as Director of Control Center Bus Operations at SEPTA, she experienced retaliation as a result of her support for a SEPTA employee with disabilities, Robert Gardner. (ECF No. 1 ¶ 10.) Plaintiff claims that as a result of her opposition to the way Mr. Gardner was treated, she was subjected to retaliatory harassment and "other retaliatory actions." (*Id*. ¶ 12.). This harassment allegedly included Plaintiff being screamed at and cursed at by Defendant Evans, negative evaluations of Plaintiff's workplace performance, and Plaintiff being denied appropriate raises. (*Id*. ¶¶ 24, 37, 39.)

Defendants filed a Motion to Dismiss that complaint, which was granted in part and denied in part on May 1, 2024. (ECF No. 19.) This Court granted Defendant's motion regarding Plaintiff's FMLA retaliation claim, finding that the Plaintiff failed to invoke her right to FMLA-qualifying leave, and thus could not sustain a claim for retaliation. (ECF No. 18 at 14.) The Court also dismissed Plaintiff's Section 1983 retaliation claim, finding that an individual cannot "seek damages [] under § 1983 for statutory violations of [] the ADA, standing alone." (*Id*. (quoting *Williams v. Pennsylvania Hum. Rels. Comm'n*, 870 F.3d 294, 300 (3d Cir. 2017))). The Court further ruled that Plaintiff failed to plead that the First Amendment protected her actions because her alleged protected actions fell within the scope of her employment, not her role as a private citizen. (*Id*. at 15.)

The Court denied the Motion to Dismiss with respect to Plaintiff's ADA and PHRA retaliation claims. First, this Court held that the statute of limitations did not bar Plaintiff's claims because Defendants' actions constituted continuing violations that created a hostile work

---

[4] The complete factual background of Plaintiff's original complaint may be found in this Court's May 2024 Motion to Dismiss Memorandum. (ECF No. 18.)

environment, thus allowing Plaintiff "to include facts that occurred outside the statute of limitations to prove a pattern or continuation of discrimination." (*Id*. at 8 (quoting *Lamonde v. Bath Saver, Inc*., No. 21-2385, 2022 WL 622739, at *3 (E.D. Pa. Mar. 3, 2022))). The Court also ruled that Plaintiff pled sufficient facts to establish a prima facie case for retaliation and thus survive a Motion to Dismiss (*Id.* at 13.)

On July 30, 2024, Plaintiff filed a new lawsuit against the same Defendants.[5] The complaint in the new lawsuit was substantially similar to the first complaint filed in this lawsuit, with some additional facts and new claims asserted. On March 27, 2025, Defendants filed a Motion to Consolidate the new case with the present one. (ECF No. 31.) The Court granted Defendants' Motion to Consolidate on May 1, 2025. (ECF No. 36.) On May 2, 2025, Plaintiff filed the present Amended Complaint (ECF No. 37) in the consolidated suit, and removed Mark Lashley as a Defendant. (ECF No. 37.) Defendants filed the present Motion to Dismiss on May 16, 2025. (ECF No. 47.)

### B. Newly-Alleged Facts in the Present Complaint

In addition to the facts that appeared in Plaintiff's original complaint (ECF No. 1), and the current complaint, Plaintiff now alleges that her failure to be promoted to a Senior Director position in 2024 was a result of her previous actions in support of Mr. Gardner. (ECF No. 37 ¶ ¶ 79-80.)

Plaintiff began working at SEPTA in 1988. (*Id.* ¶ 78.) In 2002, she transferred to the Bus Control Center, and in 2008, she was promoted to Assistant Director in Control Center Operations. (*Id.*) In 2019, she was again promoted to Director of Control Center Bus Operation. (*Id.*) Between 2002 and 2024, Plaintiff participated in developing many of SEPTA's Control Center Operations policies and processes. (*Id.*) She was responsible for the training of Control Center Bus, Rail, and

---

[5] Prior to being consolidated with the present action, that case was Civil Action No. 24-3499.

CCIM operations, CARD operations, and code and incident formatting. (*Id.*) Plaintiff was intimately involved with developing trainings, manuals, and other programs within her department. (*Id.*)

In December of 2023, while her original suit was still pending, Plaintiff applied for the position of Senior Director, Control Center Operations at SEPTA and was scheduled to be interviewed in February of 2024. (ECF No. 37 ¶ 56.) Defendant Evans was the hiring manager responsible for the role and a member of the interview panel. (*Id*. ¶ 58.) Plaintiff arrived for the 8:00 am interview at 7:45 am and made herself visible to the panel of interviewers at that time. (*Id*. ¶ 58.) Plaintiff was not let into the room until 8:10 am, at which point Defendant Evans began to stress in a harsh tone that Plaintiff only had one hour for the interview. (*Id*. ¶ 60.) Plaintiff claims that during this interview, she was met with harsh and antagonistic behavior from the interview panel, including a lack of eye contact, cold body language, and a failure to acknowledge questions she asked. (*Id*. ¶¶ 62–63.) Plaintiff claims that the interviewers' conduct violated SEPTA's policies and procedures for interviews[6]. Plaintiff later discovered that although Evans told her a time and date for her interview, other applicants were able to select from several date and time options. (*Id*. ¶ 67.)

On March 22, 2024, Plaintiff asked the recruiter for the Senior Director position, identified only as Ms. Hoehn, if there was a pool for the position, but Ms. Hoehn told Plaintiff that she was not allowed to say. (*Id*. ¶ 76.) On April 9, 2024, Plaintiff attended a meeting regarding the reorganization of her Department, during which she learned that the Senior Director position she had interviewed for had been given to another person, Rayshawn Johnson. (*Id*. ¶¶ 69–70.) At this meeting, Plaintiff saw Johnson's name on a memo that identified him as the Senior Director, and

---

[6] Plaintiff does not identify specifically which policies and procedures were violated.

that information was confirmed by Mark Lashley at the meeting. (*Id.* ¶ 70.) Johnson had previously been the Director of Subway-Elevated and Light Rail, Control Center, since 2020. (*Id.* ¶ 71.) According to Plaintiff, Johnson had less experience and was less qualified for the Senior Director position than Plaintiff.[7] (*Id.*) On or about April 10, 2024, Plaintiff received an email from Hoehn, officially informing Plaintiff that she was not selected for the Senior Director position. (*Id.* ¶ 72.)

On April 21, 2024, SEPTA announced that an external candidate, Yasmean Finney, was hired for another Senior Director position at SEPTA. (*Id.* ¶ 74.) Finney was interviewed and hired out of the same February 2024 interview process for Senior Director Control Center Operations that Plaintiff took part in. (*Id.*) Finney's prior experience in the rail industry was working as a Crew Planning Specialist from April 1999 to July 2014, and as a Dispatcher from August 2014 to August 2022. (*Id.* ¶ 77.) She did not have experience in a managerial role. (*Id.*) Plaintiff alleges that Finney also had less experience and fewer qualifications than Plaintiff for the Senior Director role. (*Id.*)

## II.  LEGAL STANDARD

In assessing whether Plaintiff has alleged claims upon which relief may be granted, the Court applies the familiar standard applicable to Rule 12(b)(6) motions. A plaintiff's complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 679.

---

[7] In fact, Plaintiff alleges that she trained Johnson on "CARD operations." (ECF No. 37 ¶ 78.)

Additionally, the Court must "treat as true all well-pleaded facts in the complaint" and construe them in "'light most favorable to the plaintiff.'" *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 290 (3d Cir. 2014) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). This standard "'does not impose a probability requirement at the pleading stage.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Instead, "[t]he complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler*, 578 F.3d at 213).

### III. DISCUSSION

Defendants argue that Plaintiff's allegations relating to SEPTA's hiring of Ms. Finney should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 47 at 2.) Defendants contend that Plaintiff's claims regarding Finney are not connected to any protected activity that Plaintiff allegedly engaged in and, as such, cannot form the basis of retaliation claims under the ADA and PHRA. (*Id.*)

To establish a prima facie case of retaliation under the ADA or PHRA, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the . . . protected activity; and (3) a causal connection between the . . . protected activity and the . . . adverse action."[8] *Tielle v. Nutrition Grp.*, 810 F. App'x 160, 162 (3d

---

[8] Courts construe the provisions contained under the PHRA consistent with its federal counterparts. *See Smith v. Comhar, Inc.*, No. 15-4913, 2017 U.S. Dist. LEXIS 33645, at *18 (E.D. Pa. 2017); *Kroptavich v. Pa. Power & Light Co.*, 795 A.2d 1048, 1054 (Pa. Super. Ct. 2002). *See also Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (analyzing the PHRA in conjunction with its federal counterparts).

Cir. 2020) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). Here, Defendant is only challenging whether Plaintiff plausibly pleads a causal connection between SEPTA's hiring of Yasmean Finney and Plaintiff's alleged protected actions. (ECF No. 47 at 3.)

In evaluating whether a causal link exists between protected activity and an adverse employment action, courts have focused on two factors: (1) the temporal proximity between the two actions and (2) evidence of ongoing antagonism by the employer. *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001). In some instances, temporal proximity may itself be dispositive of retaliatory intent if the timing of the alleged retaliatory action is "unusually suggestive" of such intent. *Krouse*, 126 F.3d at 503. When timing alone is not sufficient to establish a causal link, "courts may look to the intervening period for other evidence of retaliatory animus." *Id*. at 504. However, temporal proximity and ongoing antagonism "are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).

Plaintiff alleges that her failure to be promoted to the vacant position of Senior Director-Control Center Operations was retaliatory because she opposed and refused to participate in Defendants' violations of Gardner's ADA and PHRA rights. (ECF No. 37 ¶¶ 79–80.) Plaintiff argues that during the hiring process for the Senior Director position, she was subject to "severe animosity and antagonistic behavior towards her by Defendant Aletha [sic] Evans and the other members of the interview panel." (ECF No. 48 at 8.) Plaintiff argues that such behavior is sufficient "to show the causal connection between Plaintiff's numerous protected activities and the adverse employment actions she suffered in April 2024." *Id*.

Defendants argue that Plaintiff's claims are conclusory and fail to allege any specific causal connection between the alleged protected activity and Plaintiff being rejected for the Senior

Director role. (ECF No. 47 at 6.) Defendants contend that Plaintiff's most recent allegedly protected activity occurred in November of 2022, long before Plaintiff was rejected for the job, and Plaintiff fails to "assert any factual allegations regarding ongoing antagonism" during that gap. *Id*.; (ECF No. 49 at 2.) Defendants contend that Plaintiff's pleaded incidents are no more than "petty and benign grievances" which "fall woefully short" of "severe animosity" (ECF No. 49 at 2.) Therefore, Defendants argue that without more specific factual details, Plaintiff's allegations fall short of the standard necessary to state a claim and are precisely the type of claims that previous courts have found to be insufficient. (ECF No. 47 at 6.)

In support of their Motion, Defendants cite two cases as examples of insufficient pleadings in failure to promote cases: *Giovanni v. Bayer Properties, LLC* and *Williamson v. Philadelphia*. (*Id*. at 5.) However, neither case is factually similar enough to the present case to be persuasive. In *Giovanni*, the court found that the Plaintiff had failed to "allege sufficient facts to support his failure to promote claim," including "what promotions [Plaintiff] was eligible for but was denied, who received the promotions instead, or what those individuals' credentials were." *Giovanni v. Bayer Properties, LLC*, 2021 WL 4078055, at *4 (E.D. Pa. Sept. 8, 2021). In this case, Plaintiff includes all of those details in her Complaint. (ECF No. 37 ¶ ¶ 71, 77, 78, 81)

*Williamson* also provides little support for Defendants' Motion. In *Williamson*, the court found that the Plaintiff failed to plausibly allege a causal connection between his filing of a lawsuit against his employer and his removal from an eligible list for a promotion. *Williamson v. Philadelphia,* 169 F. Supp. 3d 630, 633 (E.D. Pa. 2016). There, the court ruled there was "no temporal proximity between the conclusion of the earlier lawsuit and the adverse action, and no allegations of any intervening antagonism." *Id*. at 634. While *Williamson* presents a similar complaint to the present case, there are two key differences. First, the plaintiff in *Williamson* made

no accusations of intervening antagonism from his employer. *Id*. In contrast, Plaintiff in this case has alleged a long history of antagonism, specifically from Defendant Evans, both before and after Plaintiff filed her initial lawsuit, as well as during the hiring process. (*See* ECF No. 37 ¶ ¶ 24, 37, 60, 63.) Secondly, the plaintiff in *Williamson* admitted that he was treated the same as four other employees who also sought to be promoted, which, as the court noted, "raises a clear inference that the lawsuit was not the factor motivating Defendants' actions." *Williamson*, 169 F.Supp.3d, at 634. The present case, however, concerns one Plaintiff who claims that she was singled out for retaliation due to her protected activities. (ECF No. 37 ¶ ¶ 79–80.) Given these differences, there is little from *Williamson* that this Court can apply to the current case.

At this stage of the proceedings, the Court is required to construe the facts in the Complaint in the "light most favorable to the plaintiff." *Santomenno*, 768 F.3d at 290. In doing so, the Court finds that Plaintiff has sufficiently pled allegations to survive a motion to dismiss. In retaliation cases, the "mere passage of time is not legally conclusive proof against retaliation." *Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div*., 982 F.2d 892, 894 (3d Cir. 1993). Courts have regularly found causal connections in cases with multi-year gaps between protected activities and subsequent retaliation when there is a pattern of antagonism in the intervening period. *See e.g. Woodson v. Scott Paper Co.,* 109 F.3d 913, 921 (3d Cir. 1997) (finding a reasonable jury could conclude a causal connection between protected activity and retaliation despite a two-year gap because of a pattern of intervening antagonism); *Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div*., 982 F.2d 892, 894 (3d Cir. 1993) (finding a court could reasonably infer a causal connection between protected activity and retaliation despite a two-year gap because of an intervening pattern of antagonism).

The present case fits squarely within these precedents. Approximately a year and a half passed between the filing of Plaintiff's initial complaint in November of 2022 and the hiring of Yasmean Finney in April 2024. (ECF No. 37 ¶ ¶ 54,74.) Within that time period, the Plaintiff has pled sufficient instances of ongoing antagonism to create a reasonable inference of retaliatory animus on the part of the Defendants. (*See* ECF No. 37 ¶ ¶ 60, 62–63, 67.) While individually each of the pleaded actions may seem insignificant, precedent urges the Court to look to the situation as a whole rather than at each isolated incident." *Farrell*, 206 F.3d at 280. With this additional context and viewing the allegations in the light most favorable to the plaintiff, Plaintiff adequately states a claim for relief that is plausible on its face.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is denied. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

_____

**HODGE, KELLEY B., J.**